## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                              :
**Shannon Marie Smith,**                      :
On behalf of herself and as Next Friend of M.S. and :
M.S.                                          :
808 Chesapeake Street, S.E. – Apartment 304   :
Washington, D.C., 20020                       :
                                              :
**Karlene Armstead,**                         :
In her personal capacity and as an ANC Member :
559 Foxhall Place, S.E.                        :
Washington, D.C., 20020                       :
                                              :
**Marlece Turner**,                           :
On behalf of herself and as Next Friend of E.A.T. :
711 Varnum Street, N.W.                        :
Washington, D.C.,                             :
                                              :
**Brenda Williams**,                          :
On behalf of herself and as Next Friend of B.W.D. :
5744 Blaine Street, N.E.                       :
Washington, D.C. 20019.                        :
                                              :
**Phomika "Pho" Palmer**                      :
In her personal capacity and as an ANC Member :
3314 – 5th Street, S.E.                        :
Washington, D.C. 20032                         :
                                              :
**Keith Kone**                                :
In his personal capacity and as an ANC Member :
1014 – 50th Place, N.E.                        :
Washington, D.C.  20019 and                    :
                                              :
**Ericka S. Black**                           :
In her personal capacity and as an ANC Member :
4231 Eads Street, N.E.                         :
Washington, D.C. 20019                         :
                                              :
                    Plaintiffs,               :
                                              :
vs.                                           :     Civil Action No. 13-CV-420 (JEB)
                                              :
**KAYA HENDERSON, CHANCELLOR,**               :
                                              :
**VINCENT C. GRAY, MAYOR,** and               :
                                              :

**THE DISTRICT OF COLUMBIA**                           :
                                                       :
                        Defendants.                    :
                                                       :
_____ :

## FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

Plaintiffs bring this action against Defendants Kaya Henderson, Chancellor of the District of Columbia Public Schools, Vincent C. Gray, Mayor of the District of Columbia, individually and in their official capacities, and the District of Columbia (collectively "Defendants").  Plaintiffs seek Declaratory and Injunctive Relief, compelling Defendants to cease in the execution of a School Closings Plan submitted by Defendant Henderson on 17 January 2013; endorsed and promoted by Defendant Gray and presented as official policy of Defendant District of Columbia.  The allegations herein are based on Plaintiffs' knowledge as to themselves, and on information and belief.  Plaintiffs also seek damages.

### INTRODUCTION

Since 1976, when Defendants and their predecessors began the practice of school closures, 55 District of Columbia Public Schools have been closed.  During that period, no school, not one, has been closed in Ward Three, an area "West of the Park."  That policy has obtained, notwithstanding the fact that at times during that period there has been under-enrollment and under-utilization in schools in Ward Three, "West of the Park."  And, during that period, that policy has obtained notwithstanding the fact that Defendants and their predecessors, members of the same protected class as Plaintiffs, have done so while knowingly, willingly, intentionally and unlawfully visiting the closures overwhelmingly and disproportionately on students of color, special education students and students who live in low income communities.  The 2013-2014 "DCPS Consolidation and Reorganization Plan" ("The Plan") continues that very same discriminatory pattern and practice and will have a startlingly disparate impact on students of color, special education students and students who live in low income communities; and that disparate impact, knowingly, willingly and intentionally undertaken, violates the United States

Constitution, the D.C. Human Rights Law and applicable federal laws.  There is a striking juxtaposition between how the Plan treats students "East of the Park," those in predominantly minority, low income communities, and yet spares students "West of the Park," those in predominantly Caucasian, affluent communities.  The same is true with respect to how the Plan treats schools housing special education students.  School Closures are not immune to judicial scrutiny.  Moreover, the Plan was announced and is being initiated with Defendants knowingly intentionally and willingly, in wholesale manner, failing to follow the applicable laws regarding mandatory citizen notice and participation for the process of school closures.  In addition, the proposed schools are being closed against the back drop of a mandatory education law, even as Defendants acknowledge that the District of Columbia's School Age population will increase by 30,000 students over the next nine years.  By ignoring their own student population increase projections and recklessly proceeding with the Plan in the face of the disparate effect on students of color, Defendants have proffered an outcome of discrimination with no limit

## PARTIES

1. Plaintiff Shannon Marie Smith is an African American, residing at 808 Chesapeake Street, in Southeast Washington, D.C., East of the Park, whose children, M.S. and M.S., will be displaced if the School Closure Plan is allowed to stand.  Moreover, programs and facilities available to her children at their current school will not be available to them at their proposed receiving school.

2. Plaintiff Karlene Armstead is an African American, residing at 559 Foxhall Place, in Southeast Washington, D.C., East of the Park, and an Advisory Neighborhood Commissioner with a school scheduled for closing within her Advisory Neighborhood Commission, 8E06.  Plaintiff did not receive the appropriate notice, required by law, when the School Closure Plan was announced on 17 January 2013.  Even though a Commissioner Elect on 13 November 2012, Plaintiff did not even receive e-mail notification of the tentative List of school closures.

3.  Plaintiff Marlece Turner is an African American residing at 711 Varnum Street, in Northwest Washington, D.C., East of the Park, whose child, E.A.T. is under a 504 Plan and will be displaced if the School Closure Plan is allowed to stand.  Programs and facilities available to her child at his current school will not be available to him at the proposed receiving school. Moreover, Defendants have failed and refused to undertake an individual evaluation of her child in advance of making the decision to close his school and move him to another school.

4.  Plaintiff Brenda Williams is an African American, residing at 5744 Blaine Street, in Northeast Washington, D.C., East of the Park, and is the parent of B.W.D. a severely disabled, wheelchair bound, Special Education student whose child will be displaced if the School Closure Plan is allowed to stand.  Programs and facilities available to her child at his current school will not be available to him at the proposed receiving school.  Moreover, Defendants have failed and refused to undertake an individual evaluation of her child in advance of making the decision to close his school and move him to another school.

5.  Plaintiff Phomika "Pho" Palmer is an African American residing at 3314 5th Street, in Southeast Washington, D.C., East of the Park, and an Advisory Neighborhood Commissioner with a school scheduled for closing within her Advisory Neighborhood Commission, 8C07. Plaintiff did not receive the appropriate notice, required by law, when the School Closure Plan was announced on 17 January 2013.  Even though a Commissioner Elect on 13 November 2012, Plaintiff did not even receive e-mail notification of the tentative List of school closures.

6.  Plaintiff Keith Kone is an African American residing at 1014 – 50th Place in Northeast Washington, D.C., East of the Park, and was an Advisory Neighborhood Commissioner with a school scheduled for closing within his Advisory Neighborhood Commission, 7C07.  Plaintiff did not receive appropriate notice, required by law, when the tentative School Closure Plan was announced on 13 November 2013.

7. Plaintiff Ericka S. Black is an African American residing at 4231 Eads Street, in Northeast Washington, D.C., East of the Park, and an Advisory Neighborhood Commissioner with a school scheduled for closing within her Advisory Neighborhood Commission, 7D. Plaintiff did not receive the appropriate notice, required by law, when the School Closure Plan was announced on 17 January 2013. Moreover Plaintiff's predecessor did not receive notice set out by law when the tentative School Closure Plan was announced on 13 November 2013.

8. Defendant Kaya Henderson is the Chancellor of the D.C. Public School System and at most of the time relevant to this action was responsible for the acts and omissions of employees and agents of the District of Columbia. For those times that he was not Mayor, under law, he inherits the acts and omissions of those employees and agents.

9. Defendant Vincent C. Gray is the Mayor of the District of Columbia and at most of the time relevant to this action was responsible for the acts and omissions of employees and agents of the District of Columbia. For those times that he was not Mayor, under law, he inherits the acts and omissions of those employees and agents.

10. The District of Columbia is a municipal entity comprised of its agencies, departments, and divisions, and the officers and managers of those agencies, departments and divisions, including the D.C. Public School System, the Chancellor, the Mayor and other administrators. Plaintiffs assert *respondeat superior*, where appropriate.

**JURISDICTION AND VENUE**

11. This Court has jurisdiction to hear and decide this Case pursuant to 28 U.S.C. §1331 and 1343 and by virtue of the fact that Defendants successfully removed this Case from D.C. Superior Court to this Court because several of the claims arise under the laws of the United States.

12. Defendant Kaya Henderson has sufficient minimum contacts with the District of Columbia to

be sued in this jurisdiction and has intentionally availed herself of the markets and services of the District of Columbia by serving as an appointed local government official.

13. Defendant Gray has sufficient contacts with the District of Columbia to be sued in this jurisdiction and has intentionally availed himself of the markets and services of the District of Columbia by serving as an elected official.

14. Both Defendants have sufficient minimum contacts with the District of Columbia to be sued in this jurisdiction and have intentionally availed themselves of the markets and services of the District of Columbia by serving as an elected or appointed official. Venue is appropriate in the District of Columbia given that all of the events and omissions giving rise to this action took place in the District of Columbia.

**FACTUAL ALLEGATIONS**

15. According to the Plan, Defendants will close schools in two phases: First, 13 schools will close near the end of the 2012-2013 academic school year ("2013 Closings"); and Second, 2 additional schools will close at the conclusion of the 2013-2014 academic school year ("2014 Closings").

16. The 2013 Closings would result in the closure of public schools attended by 2,571 local students.  Of those, in both years, an overwhelmingly disproportionate number are minorities, students with disabilities, and low-income students.  Defendants, members of the same protected classes, knew of these glaring disparities and nonetheless chose to carry out their discriminatory Plan.

17. The 2013 Closings will result in the closure of the public schools attended by 2,402 black students, 159 Latino students, 12 students of Asian or other ethnicity, and only 1 white student; 2,104 of the students in the affected schools are low-income, and 596 are special education

students.

18. As a group, black students make up 93.4% of students enrolled in schools that will be closed by the Plan in 2013; Latinos are 6.2%, Asian and other are 0.5%, and whites are 0.0%.  Special education students make up 33.8% of students in those schools, and 81.9% of students in those schools are low income.

19. The DCPS Plan to close schools affecting special education students and move them to another school was done without providing the parents the opportunity to participate in the decision making process and without providing the opportunity for each affected child to have an individual evaluation of his educational needs.

20. Moreover, when the Plan was submitted on 17 January 2013, Defendants did not and yet do not have an existing program in place when the decision was made to close the schools and move the children.

21. The 2014 Closings would result in the closure of public schools attended by 2,792 local students.  Of those, a disproportionate number are minorities, students with disabilities, and low-income students.

22. The 2014 Closings would result in the closure of the public schools attended by 2,600 black students, 180 Latino students, 13 students of Asian or other ethnicity, and only 2 white students; 2,295 of the students in the affected schools are low-income, and 778 are special education students.

23. As a group, African American  students make up 93.1% of students enrolled in schools that will be closed by the 2013 Closings; Latinos are 6.4%, Asian and other are 0.5%, and whites are 0.1%.

24. Special education students make up 27.9% of students in those schools.

25. And, 82.2% of students in those schools are low income, residing East of the Park.

26. Contrary to the assertions from the Plan, schools with smaller enrollments do not cost much

more, if more at all, than schools with larger enrollments.

27. Contrary to the assertions from the Plan, the proposed closures will not result in substantial savings and likely will result in no savings at all, indeed could well result in losses.

28. Contrary to the assertions from the Plan, the proposed closures will not likely result in more and better resources for the receiving schools.

**NATURE OF THE ACTION**

29. At all times relevant to this action, Plaintiffs Smith, Armstead, Turner, Williams, Palmer and Washington have been residents of the District of Columbia and, except Plaintiff Armstead, Palmer and Washington parents or legal custodian of children who attend D.C. Public Schools.

30. Each Plaintiff and each Plaintiff's child, among those who have children, is an individual of color, of African American, Hispanic or Latino descent.

31. Plaintiffs Karlene Armstead, Phomika Palmer, Keith Kone and Ericka S. Black are or have been Advisory Neighborhood Commissioners representing at least one school that is scheduled for closure.

32. Each of the Plaintiffs and all of the parents and students affected by the proposed school closures reside in areas of the District of Columbia commonly referred to as "East of the Park," predominantly African American and significantly low income communities.

33. No parent or student residing in Ward Three, "West of the Park" (predominantly Caucasian and affluent communities) is affected by the proposed school closures. Nor has any such parent or student been affected by school closures since the pattern and practice began in 1976. Students in the neighborhoods with closed schools, including the children of Plaintiffs, will be forced to travel longer distances to schools than other students; will have less facilities and worse conditions within those facilities; will be forced to navigate major roads and other barriers; and will do so without any concrete evidence that their test scores will improve.

Indeed, according to widely accepted and well researched, relevant data, students subject to similar school closures in the District of Columbia have performed worse than before being moved.

34. Students in the neighborhoods with closed schools, including the children of Plaintiffs, will be required to walk or travel through unfamiliar and even dangerous neighborhoods, putting their safety at risk.

35. By the District's own measurements, students previously dislocated by the 2008 school closures are performing no better than they had at their closed neighborhood schools

36. The consolidated schools will be overwhelmed with the sudden influx of greater percentages of new students and students with disabilities.

37. Any delay in the provision of special education services to affected students will have a compounding adverse impact on students with disabilities from both the closed schools and the new transferring schools and likely lead to greater failures of the District to provide a free and appropriate public education.

38. The school closures also promote what has been described by a recent, credible study as "churn and instability." Turnover of teachers in the District of Columbia has been unusually high since 2009.

39. The kind of "churn" being experienced results in instability.  The study's results, "How Teacher Turnover Harms Students' Achievements," indicate that students in grade-levels with higher turnover score lower in both ELA and math and that this effect is particularly strong in schools with more low-performing and African American students.

40. Moreover, the results of the Study suggest that there is a disruptive effect of turnover beyond changing the distribution in teacher quality.

41. The District cannot demonstrate a "substantial legitimate justification" because it cannot show how the proposed closings will provide any educational benefit.

42. The proposed plan to close fifteen D.C. Public Schools (DCPS) must be educationally necessary to meet its goal of improving the educational prospects of displaced students.

43. However, the Plan will only continue to disproportionately and adversely impact students of color, those with disabilities and those who live in certain neighborhoods.

44. The Plan is extreme, and it will continue to be counterproductive, therefore it does not meet the educational necessity test required.

45. Indeed, the Plan goes against Chancellor Kaya Henderson's goals to improve achievement for all students, to invest in struggling schools, to increase graduation rates, to improve student satisfaction, and to increase enrollment.

46. Based on past closures, the only result that emerged is a significant disparate impact on students of color, those with disabilities and those residing in certain neighborhoods (the protected groups).

47. In addition, the District has failed to show how the 2008 school closures have made significant improvements or positive changes to help it move closer to meeting its educational goals.

48. In fact, the 2008 school closures were counterproductive to the District's educational goals. The closures did not improve student performance, increase enrollment or improve achievement for all students, but instead hindered student performance.

49. The 2008 closures did not promote equal educational opportunity for the protected groups, but instead created less opportunity for those groups by removing educational resources from their communities while stretching resources at the receiving schools.

50. The 2008 closures did not help the District invest in the struggling schools, but instead completely ended any chance of investments when it shut down those schools.

51. The 2008 closures did not properly allocate money to DCPS, but instead it lost millions of dollars due to the enormous expenses related to closing schools and accommodating displaced students at receiving schools.

52. The District cannot demonstrate a "substantial legitimate justification" for the disparate impact because it cannot show that its drastic plan to close schools is an educationally necessary action that relates to meeting its educational goals.

53. When schools are closed, students' learning habits are disrupted and they are faced with a multitude of adjustments that come from enrolling in the receiving schools.

54. Low-income families will have difficulty finding transportation for their children transferring to new schools.

55. Neighborhoods lose a central institution of learning and activity, and communities that have invested in their local schools, will no longer have a focal point where one can feel safe, promote citizenship, or maintain a sense of community.

56. For these reasons, the District has not demonstrated a convincing educational necessity for why it is making decisions in the way that it has, especially when those decisions are having disparate impacts on racial minorities and students with disabilities.

**FIRST CAUSE OF ACTION**

57. Plaintiffs are informed and believe, and on that basis allege, that at all times herein mentioned each of the Defendants was an agent, servant, employee, and/or joint venture of the remaining Defendant, and was at all times acting within the course and scope of such agency, service, employment, and/or joint venture, and each Defendant has ratified, approved, and authorized the acts of the remaining Defendant with full knowledge of the facts.

58. There is a unity of interest between Defendants, and each acts as the alter ego of the other.

**Violation of the D.C. Human Rights Act, D.C. Code § 2-1402.73, § 2-1402.68 and § 2-1402.41**

59. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 58.

60. The D.C. Human Rights Act protects citizens from discrimination based on race, disability and

residency among other classifications.

61. The DCHRA prohibits unintentional discrimination as well as intentional discrimination.

62. The proposed closure of the public schools is an unjustifiable discriminatory practice because it intentionally discriminates on the basis of race, disability and residency and it disproportionately affects African American, Hispanic, Latino, and disabled students all who live in certain parts of the District of Columbia, "East of the Park."

63. Section 2-1402, the "Effects Cause" of the Act, provides that practices which have the effect or consequence of violating any of the provisions of the Act shall be deemed to be an unlawful discriminatory practice. The Effects Clause of the DCHRA has been interpreted to mean that despite the absence of any intention to discriminate, practices are unlawful if they bear disproportionately on a protected class.

64. The proposed closures shockingly affect 2,570 people of color, while sparing all but two Caucasian students.

65. These discriminatory actions are being undertaken knowingly, intentionally and willingly by Defendants notwithstanding the fact that they are Members of the same protected classes as Plaintiffs.

66. The legal arguments concerning these violations have been more fully explored in the Memorandum of Points and Authorities accompanying Plaintiffs' Application for a Temporary Restraining Order and Motion for a Preliminary Injunction, previously filed and will be further explored in briefs submitted by Plaintiffs to the Court.

67. As a consequence of Defendants' acts or omissions, Plaintiffs have been injured in an amount to be proven.

**Failure to provide Notice to the appropriate ANCs; give "Great Weight" to the views of those ANCs; and make decisions in open and public meetings**

68. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 67.

69. Notice of pending governmental action and an opportunity to express views about that pending action are fundamental, inescapable statutory due process requirements when it comes to the role of ANCs.  In the instant case, Defendants admit that no legal notice was given to the subject ANCs and thus no legal opportunity to express their views was provided.

70. School closings are an education issue that directly impacts the responsibilities of the ANC Commissioners and their ability to perform their duties. The ANC Commissioner Plaintiffs were independently injured by virtue of the fact that they did not receive official notice of the Plan and were thus prevented from having their official views, and the views of their neighborhood constituents, integrated in the decision-making process and accorded the statutory "great weight" consideration.

71. The views of the ANCs concerning the proposed school closures were not given any weight, let alone great weight, as required by law.

72. Defendants Chancellor Kaya Henderson and Mayor Vincent Gray in executing and issuing the proposed School Closure Plan finally issued on 17 January 2013, and on all actions pertaining to the proposed School Closure Plan, also failed and continue to fail to comply with the provisions of the Sunshine Amendment in the D.C. Self-Government Act which mandates transparency in local government decision-making, requiring that all such decisions be undertaken in open, public meetings.  The decisions regarding the school closures were done in the dark.

73. Plaintiffs have been injured as a result of Defendants' acts or omissions in an amount to be proven.

**SECOND CAUSE OF ACTION**

**Violation of the Americans with Disabilities Act, 42 U.S.C.A. § 12132**

74. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 73.

75. The decision to close 15 schools, although facially neutral, will have a disproportionately adverse effect on students with disabilities.

76. While special education students comprise only 14.4% of all students, they make up 23.2% of students in schools scheduled for 2013 Closings. When looking at the 2014 Closings, special education students make up 27.9% of students in those schools.

77. The Plan will needlessly uproot, transfer, and destabilize the children represented by the Plaintiff parents and other children in special education who will suffer academic, developmental and emotional setbacks as a direct result.  By sending off these children to new and unfamiliar teachers, in a new and unfamiliar school, without any supportive services, and perhaps placing them in larger "inclusion" classes with non-disabled children, Defendants will destroy the progress that the children have made or could make, and inflict irreparable injury on them.

78. Defendants will also jeopardize the safety of children whose disabilities often place them at special risk.  And with an influx of children from the closing schools, Defendants will also disrupt the programs for children in special education in the receiving schools and inflict the same irreparable injury on them as well.

79. Defendants are carrying out a program of school closings that will do more harm to children with disabilities than it will to their non-disabled classmates.  Balanced against this irreparable harm, Defendants will achieve little or nothing in cost savings. Accordingly, Defendants have violated their duty to provide a "reasonable accommodation" to these children by leaving them exactly where they are.

80. Plaintiffs have been injured as a result of Defendants' acts or omissions in an amount to be proven.

**Violation of Section 504 of the Rehabilitation Act of 1973**

81. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 80.

82. The school closings are in violation of Section 504 of the Rehabilitation Act of 1973.

83. Plaintiffs Brenda Williams and Marlece Turner are qualified individuals with children with a disability under the Rehabilitation Act.

84. Defendant District of Columbia receives Federal financial assistance.

85. Defendants' failure to maintain a free and appropriate education in Plaintiffs' neighborhood schools slated for closure, considering the relevant and unnecessary burdens thrust upon Plaintiffs by closing these schools, demonstrate both bad faith and a gross departure of accepted standards among educational professionals.  Such treatment of special needs students rises to the level of discrimination based solely on Plaintiffs' disabilities.

86. Taking into account the outcome of the 2008 school closings, the defendant's plan to close fifteen additional schools is a demonstration of bad faith. Of the 2,792 students expected to be impacted by these closures, a full 27.9% are special needs.

87. Plaintiffs have been injured as a result of Defendants' acts or omissions in an amount to be proven.

**Violation of the Individuals with Disabilities Education Act (IDEA)**

88. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 87.

89. The Individuals with Disabilities Education Act (IDEA) funds special education programs. Under the Individuals with Disabilities Education Act, each school district shall ensure that the educational placement of each student with a disability is determined at least annually, is based

on his or her Individualized Education Program (IEP) and is as close as possible to their home.

90. Unless the IEP of a child with a disability requires some other arrangement, the child is educated in the school that he or she would attend if not disabled. In selecting the least restrictive environment, consideration is to be given to any potential harmful effect on the child or on the quality of services that he or she needs, 34 C.F.R. 300.116.

91. The children of Plaintiffs Marlece Turner and Brenda Williams have not been afforded the protections of IDEA.

92. Plaintiffs have been injured as a result of Defendants' acts or omissions in an amount to be proven.

**THIRD CAUSE OF ACTION**

**Violation of Title 42, U.S.C. § 1983.**

93. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 92.

94. Title 42 U.S.C. § 1983 provides, "Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, Suit in equity, or other proper proceeding for redress."

95. Defendants' Plan denies students of color, those with disabilities and those residing in low income neighborhoods equal protection in violation of the United States Constitution.

96. Plaintiffs have been injured as a result of Defendants' acts or omissions in an amount to be proven.

**FOURTH CAUSE OF ACTION**

**Violation of Title VI of the 1964 Civil Rights Act**

97. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 96.

98. Title VI of the 1964 Civil Rights Act and the Department of Education regulations implementing that Act, like the D.C. Human Rights Law, prohibit recipients of federal funding from discriminating based on race, color, or national origin, 42 U.S.C.A §§ 2000d-2000d-7.

99. Under Department of Education regulations, schools and districts violate federal law when they adopt and implement facially neutral policies, and the policies nonetheless have an unjustified effect on students on the basis of race or disability.

100. Any fair analysis of the facts in the instant situation clearly demonstrates the presence of a *prima facie* case of disparate impact.

101. As a consequence, it is within the jurisdiction of this Honorable Court to mandate that appropriate District of Columbia Government authorities take steps to ensure compliance with Title VI of the 1964 Civil Rights Act.

102.   Plaintiffs have been injured as a result of Defendants' acts or omissions in an amount to be proven.

**FIFTH CAUSE OF ACTION**

**Breach of Contract**

103. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 102.

104. Defendants have publically pledged, orally and in writing, to preserve the schools slated for closing and to keep them in the DCPS Inventory Stock, yet actions revealed since the announcement of the proposed school closures on 17 January 2013 belie those promises, while these Plaintiffs and others have relied on the promises made, implicit and explicit, by the District

of Columbia Government.

105. By remaining in, returning to the District of Columbia Public School System, these Plaintiffs and others have relied to their detriment on this trail of promises not kept and now stand to lose significantly.

**Fraudulent Misrepresentation**

106. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 105.

107. In making their promises, implicitly and explicitly, Defendants and their predecessors misled and deceived Plaintiffs and others and misrepresented their true intent when it came to the future of the schools closed and slated for closure.

108. Defendants thereby intended to induce and did induce Plaintiffs and others to rely on their acts and omissions, leading Plaintiffs and others to remain in, return to or come to District of Columbia Public Schools.

109. Plaintiffs have been injured as a result of Defendant's acts and omissions.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs demand judgment and permanent relief against Defendants as follows:

1. Finding that defendants, the Chancellor and the Mayor violated provisions of the D.C. Human Rights Act.

2. Finding that the Advisory Neighborhood Commissions were not legally notified of the proposed school closures and that the views of the Advisory Neighborhood Commissions were not given great weight.

3. Finding that Defendants violated the Americans with Disabilities Act.

4.  Finding that Defendants violated Section 504 of the Rehabilitation Act of 1973.

5.  Finding that Defendants violated the Individuals with Disabilities Act (IDEA).

6.  Finding that Defendants violated Title 42 U.S.C. § 1983.

7.  Finding that Defendants violated Title VI of the 1964 Civil Rights Act and mandating that Defendant Mayor Gray take action to overcome the violations of that Act.

8.  Finding that Defendants, through their acts and omissions, have harmed the education of the children of Plaintiffs, have breached their promises to Plaintiff and committed Fraud.

9.  Awarding Plaintiffs appropriate compensatory damages, treble damages and punitive damages.

10. Granting a Permanent Injunction, preventing Defendants from further taking action to implement the proposed school closures.

11. Awarding Plaintiffs appropriate other injunctive relief, including mandating that the Chancellor, Mayor and District of Columbia Government design and implement a plan to improve the performance of all students in the District of Columbia including those attending those schools that are proposed to be closed.

12. Granting Permanent Injunctive relief suspending the implementation of the D.C. Public Schools Consolidation and Reorganization Plan.

13. Awarding Plaintiffs the costs and expenses of this action, including reasonable attorneys' and experts' fees.

14. Granting injunctive relief against Defendants to prevent future wrongful conduct.

15. Awarding Plaintiffs such other and further relief as this Court deems just, equitable, and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury of twelve persons of each and every claim so triable.

/s/ Johnny Barnes

_____

**Johnny Barnes, D.C. Bar Number 212985**

Counsel for PlaintiffS
301 "G" Street, S.W, Suite B101
Washington, D.C.       20024
AttorneyJB7@gmail.com
**DATED: 28 May 2013**                     Telephone (202) 882-2828